*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO JAVONE CUMMINGS,

Defendant-Appellant.

UNPUBLISHED
July 15, 2026
1:39 PM

No. 372244
Wayne Circuit Court
LC No. 22-001671-01-FC

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of felony murder, MCL 750.316(1)(b); felon in possession of a firearm, MCL 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for the felony-murder conviction, two to eight years' imprisonment for the felon-in-possession conviction, and consecutive terms of 10 years' imprisonment for the felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the fatal shooting of Ronardo Wright at the Leland Apartments in Detroit. In March 2020, Jakyah Demps, who was then 17 years old and engaged in sex work, met defendant. Defendant allowed Demps to sleep in his car, helped her obtain customers, and received some of the money that she earned. In other words, defendant sex-trafficked Demps while she was a minor.

On the evening of August 19, 2020, defendant drove Demps and Denaya Fielder to the Leland Apartments so that Demps could meet a customer. The customer, Wright, had agreed to pay Demps $80 but paid her only $20. When Demps returned to the vehicle and showed defendant the money, defendant stated that he was about to go "beat dog a**." Defendant, Demps, and Fielder entered the building and took an elevator to the nineteenth floor. At defendant's direction, Demps knocked on Wright's apartment door and demanded the remaining money. Defendant attempted to kick down the door and then fired several shots through it with a handgun. Demps

and Fielder fled down the stairs. When they reached defendant's car, defendant reappeared, placed the handgun in a black bookbag behind the passenger seat, and drove away.

Wendy Gill, who lived on the same floor as Wright, heard gunshots and called him. Wright told Gill that he had been shot and that a man and a woman had been at his door. When Gill went to assist him, Wright also stated, "She shot me." Responding officers found bullet holes in Wright's apartment door, shell casings in the hallway, and two gunshot wounds to Wright's chest. Wright later died from his injuries.

Approximately a week after the shooting, officers arrested defendant and Demps during a prostitution sting operation. Defendant was driving a gray Chrysler 300, and officers recovered a cellular telephone from the vehicle. Surveillance footage showed a gray Chrysler 300 at the Leland Apartments on the night of the shooting. Cellular-location evidence also placed the telephone attributed to defendant near the apartment building that night.

Demps was charged with second-degree murder and felony-firearm for her role in the offense, but she pleaded guilty to assault with intent to do great bodily harm less than murder. In exchange for being convicted of a lesser crime, Demps agreed she would provide truthful testimony against defendant. At defendant's trial, Demps identified defendant as the shooter. Fielder's testimony materially corroborated Demps's account. Defense counsel cross-examined Demps regarding her plea agreement, her prior statements to police, and her incentive to shift responsibility for the shooting to defendant. Counsel returned to those points during closing argument.

The trial court instructed the jury regarding witness credibility and specifically informed the jury that Demps had entered into an agreement with the prosecution in exchange for her testimony. The court did not instruct the jury under M Crim JI 5.4 that Demps was an undisputed accomplice or under M Crim JI 5.6 that an accomplice's testimony should be examined closely and accepted with caution. After the court read the instructions, it asked whether counsel objected to the manner in which they had been read. Defense counsel responded, "No, Your Honor." The jury found defendant guilty as charged. This appeal followed.

## II. DIRECT APPEAL

### A. INSTRUCTIONAL ERROR

Defendant argues that the trial court erred by failing to provide the jury with the instructions applicable to the testimony of an undisputed accomplice. We conclude that defendant waived this claim of instructional error. Even if the issue were merely forfeited, defendant has not established an outcome-determinative plain error.

We review de novo claims of instructional error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Jury instructions must be considered as a whole, rather than extracted piecemeal, to determine whether error occurred. *Id*. A party waives an issue when the party intentionally relinquishes or abandons a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Waiver extinguishes any error and forecloses appellate review. *Id*. at 215-216. In the context of jury instructions, defense counsel waives a claim of error by expressly approving the instructions. *Kowalski*, 489 Mich at 503.

Here, after reading the final instructions and before releasing the jury to deliberate, the trial court asked whether counsel had any objection to the way the instructions were read. Defense counsel responded, "No, Your Honor." Although defendant characterizes counsel's response as a mere failure to object, it occurred in response to the trial court's express request for any objection after the instructions had been read in full. Counsel therefore affirmatively approved the instructions and waived defendant's claim of instructional error. See *id*.

Even were we to treat counsel's response as a forfeiture rather than a waiver, reversal would not be warranted. An unpreserved claim that a trial court failed to give a cautionary accomplice instruction is reviewed for plain error affecting substantial rights. *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005). To obtain relief, a defendant must establish that an error occurred, the error was plain, and the plain error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Reversal is warranted only "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). Here, the parties do not dispute that Demps was an accomplice. She admitted that she participated in the events leading to Wright's death and that she pleaded guilty to a reduced offense arising from the same incident in exchange for her truthful testimony. Assuming without deciding that the omission of M Crim JI 5.4 and M Crim JI 5.6 constituted a plain error, the omission did not affect defendant's substantial rights.

In *Young*, our Supreme Court explained that the omission of a cautionary accomplice instruction did not require reversal when other evidence supported the defendant's guilt, defense counsel exposed the accomplices' potential credibility problems through cross-examination, and the jury received a general witness-credibility instruction. *Young*, 472 Mich at 143-144. The same considerations are present here. Fielder's testimony materially corroborated Demps's account. Surveillance footage showed defendant arriving at the Leland Apartments and leaving with Demps and Fielder. Cellular-location evidence placed the telephone attributed to defendant near the apartment building on the night of the shooting. The jury likewise heard evidence that defendant was arrested in the Chrysler 300 identified in the surveillance footage and witness testimony.

Moreover, the jury was fully aware of the reasons to approach Demps's testimony with care. Demps acknowledged on direct examination that she had been charged with second-degree murder and felony-firearm and had received a substantially reduced sentence in exchange for truthful testimony. Defense counsel cross-examined Demps regarding that agreement and argued during closing that Demps had a powerful incentive to shift blame to defendant. The trial court instructed the jury to consider each witness's bias, prejudice, and personal interest in the outcome of the case, and it specifically instructed the jury to consider Demps's agreement with the prosecutor when evaluating her testimony. On this record, defendant has not shown that the omitted accomplice instructions affected the verdict. See *id*.

## B. INEFFECTIVE ASSISTANCE

Defendant alternatively argues that trial counsel was ineffective for failing to request the accomplice instructions. We disagree.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). We review findings of fact for clear error and questions of law de novo. *Id*. However, because defendant did not move for a new trial or a *Ginther*[1] hearing, "our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

To establish ineffective assistance of counsel, a defendant must show "that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted).

Even assuming that counsel performed deficiently by failing to request M Crim JI 5.4 and M Crim JI 5.6, defendant has not established prejudice. In *People v Orlewicz*, 293 Mich App 96, 109; 809 NW2d 194 (2011), this Court rejected a similar ineffective-assistance claim when the jury received the general credibility instruction and defense counsel extensively attacked the accomplices' credibility, including their agreements with the prosecutor and their motivation to blame the defendant. As discussed, the jury in this case received the general credibility instruction and an instruction specifically addressing Demps's agreement with the prosecution. Defense counsel also attacked Demps's credibility during cross-examination and closing argument. And Demps's testimony was corroborated by Fielder, the surveillance footage, and the cellular-location evidence. There is no reasonable probability that the jury would have reached a different verdict had it also received the accomplice instructions.

## III. STANDARD 4

Defendant raises several additional claims in a Standard 4 brief. See Supreme Court Administrative Order No. 2004-6. None warrant relief.

### A. ARREST, SEARCH, AND DELAY IN ARRAIGNMENT

Defendant argues that the police unlawfully arrested him merely "for investigation" and that the trial court should have suppressed his cellular telephones, his vehicle, and any evidence obtained from those items. He further suggests that suppression was required because he was detained for approximately 72 hours before his arraignment. Defendant has not established that he is entitled to relief.

"We review a trial court's factual findings at a suppression hearing for clear error, but review de novo the ultimate ruling on a motion to suppress." *People v Jones*, 279 Mich App 86, 90; 755 NW2d 224 (2008).

The United States and Michigan Constitutions protect individuals against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A police officer may arrest an

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

individual without a warrant under the circumstances identified in MCL 764.15. Relevant here, an officer may make a warrantless arrest when "[a] felony in fact has been committed and the peace officer has reasonable cause to believe the person committed it." MCL 764.15(1)(c). The prosecution bears the burden of establishing that a warrantless arrest was supported by probable cause. *People v Tierney*, 266 Mich App 687, 705; 703 NW2d 204 (2005). Whether probable cause existed depends on the totality of the circumstances known to the officers at the time of the arrest. *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014).

Defendant relies primarily on *People v Martin*, 94 Mich App 649; 290 NW2d 48 (1980), to support his argument. In *Martin*, the officers repeatedly acknowledged that the defendant had been arrested solely "for investigation of murder." *Id*. at 653. Because "investigation of murder" is not a criminal offense, this Court concluded that the arrest was unlawful, notwithstanding the possible existence of probable cause to arrest the defendant for a different offense. *Id*. Similarly, in *People v Davenport*, 99 Mich App 687, 692; 299 NW2d 368 (1980), also cited by defendant, this Court explained that the police may not arrest an individual merely to investigate whether the individual committed a crime.

The limited record in this case does not establish that the police arrested defendant merely "for investigation." Officer Damario Elliott-Glenn testified that, during the prostitution sting, officers approached defendant's parked vehicle, ordered defendant out of the vehicle, recovered a cell phone from the driver's seat, searched the vehicle at the scene, and subsequently impounded it. Officer Elliott-Glenn agreed that the operation had been arranged to arrest both Demps and the driver, defendant. But he did not testify that defendant was arrested merely to facilitate an investigation into the homicide, and no other record evidence establishes that proposition. Accordingly, the record does not contain the type of express acknowledgment that was dispositive in *Martin*.

The record is similarly inadequate to evaluate defendant's assertion that the police unlawfully seized or searched his cell phone and vehicle. Defendant quotes a portion of an affidavit in his appellate brief, but the search-warrant packet is not part of the lower-court record. Defendant likewise has not provided the affidavit or the search-warrant packet to this Court on appeal. The record also does not contain a vice-operation report, body-camera footage, communications among investigators, or detention records that would supply the missing factual context. Consequently, this Court cannot determine what information supported the issuance of any warrant, whether the police relied on an exception to the warrant requirement for any particular search or seizure, or whether the challenged evidence was obtained through exploitation of an allegedly unlawful arrest. Defendant also does not identify with specificity the evidence introduced at trial that he believes should have been suppressed or explain the causal relationship between each item of evidence and the allegedly unlawful conduct.

Defendant's reliance on *People v Freeman*, 413 Mich 492; 320 NW2d 878 (1982), does not cure these deficiencies. In *Freeman*, the police encountered an automobile idling in a parking lot late at night. They lacked any additional basis to suspect criminal activity. *Id*. at 493-497. The officers in the instant case did not approach defendant merely because he happened to be sitting in a parked vehicle. The record establishes that they approached him during a planned vice operation involving Demps and that the operation was designed to effectuate the arrest of the driver who transported her. *Freeman* is thus factually distinguishable.

Additionally, defendant's assertion that he was held for approximately 72 hours before his arraignment does not independently require suppression. A delay in arraignment does not automatically render physical evidence inadmissible. Rather, suppression is required only if the evidence would not have been discovered but for police exploitation of an unlawful prearraignment delay. *People v Cain*, 299 Mich App 27, 49-50; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013); see also *People v Mallory*, 421 Mich 229, 240-241; 365 NW2d 673 (1984). The lower-court record does not contain detention records, interview records, or other evidence establishing the length or circumstances of defendant's detention. Nor does defendant explain what evidence was obtained during the allegedly unlawful portion of the detention or how the police exploited the delay to obtain that evidence. His conclusory assertion of a delayed arraignment therefore does not establish an entitlement to suppression.

A defendant appealing a trial court's ruling bears the burden of furnishing this Court with a record sufficient to verify the factual basis of the claimed error. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Likewise, an appellant may not merely announce a position and leave it to this Court to discover and rationalize the factual and legal basis for the claim. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Because the record does not establish that defendant was arrested merely "for investigation," does not permit meaningful review of the basis for the arrest or the subsequent searches and seizures, and does not demonstrate a causal connection between any allegedly unlawful conduct and evidence admitted at trial, defendant has not established that suppression was required.

Defendant likewise has not established that counsel was ineffective for failing to pursue suppression more extensively. The suppression issue was presented to and decided by the trial court, and counsel addressed defendant's warrant-related concern on the first day of trial. Because the existing record does not establish a meritorious basis for suppression, defendant cannot show that counsel performed deficiently or that additional litigation of the issue would have affected the outcome of the proceedings. Counsel is not ineffective for failing to advance a futile position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. PRELIMINARY EXAMINATION

Defendant next argues that the delay in completing his preliminary examination violated his due-process rights. We disagree.

Whether a defendant was denied due process presents a constitutional question that this Court reviews de novo. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). This Court reviews any underlying factual findings for clear error. *People v Gillam*, 479 Mich 253, 260; 734 NW2d 585 (2007). However, defendant did not preserve this issue by raising it in the trial court. This Court reviews an unpreserved constitutional claim for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

A preliminary examination is a statutory procedure, not a constitutional right. *People v Hall*, 435 Mich 599, 603; 460 NW2d 520 (1990). Under MCR 6.110(B)(1), a preliminary examination generally must commence within 14 days of arraignment, but the district court may adjourn the examination for good cause shown on the record. The rule governs the commencement of the examination; it does not require that the examination be completed within 14 days. In any

event, a violation of the timing requirement is harmless unless the defendant demonstrates actual prejudice. MCR 6.110(B)(1).

The available record establishes that defendant's preliminary examination began on January 13, 2022. Defense counsel requested dismissal because the prosecution could not complete the examination that day. The prosecutor explained that one necessary witness was in the custody of the Michigan Department of Corrections and that a department-wide outbreak of illness made securing that witness difficult. The district court expressly found good cause to hold the examination in part, proceeded with the available witnesses, and continued the matter. The examination resumed on March 10, 2022, when Demps testified.

Defendant emphasizes that the preliminary examination occurred long after his arrest. But the relevant rule measures the time between arraignment and the commencement of the preliminary examination, not the time between arrest and completion. Defendant does not develop an argument that the examination failed to commence within the period permitted by MCR 6.110(B)(1). Nor has he shown that the district court abused its discretion by finding good cause to adjourn the examination after it commenced. In any event, defendant does not establish actual prejudice resulting from the delay. He does not identify evidence lost because of the delay, nor does he demonstrate that the prosecution gained an unfair advantage, or explain how the delay affected the jury's verdict after a full trial. Even assuming a violation of the timing requirement, defendant has not established a basis for reversal. See MCR 6.110(B)(1).

## C. SUBSTITUTE COUNSEL

Defendant argues that he was denied counsel at a critical stage because attorney Vanessa Moss stood in for defendant's appointed attorney, Coral Watt, at his June 30, 2023 pretrial hearing. The record does not support defendant's claim.

Whether a defendant was denied the constitutional right to counsel presents a question of constitutional law that this Court reviews de novo. *People v King*, 512 Mich 1, 10-11; 999 NW2d 670 (2023). Because the right to counsel is preserved absent a personal and informed waiver, a defendant need not affirmatively invoke the right or object to its deprivation to preserve the issue for appellate review. *Id*. at 14. A complete deprivation of counsel during a critical stage is a structural error requiring automatic reversal. *Id*. at 4.

Assuming without deciding that the June 30, 2023 pretrial hearing was a critical stage, defendant was not deprived of counsel. Attorney Vanessa Moss appeared on behalf of Coral Watt, who remained defendant's attorney of record, and represented defendant throughout the hearing. Although defendant initially stated that he had not known Moss would appear, the trial court explained the circumstances and asked whether defendant objected to Moss standing in for Watt that day. Defendant stated that he did not object. Defendant's initial surprise that Moss appeared does not transform representation by substitute counsel into a complete denial of counsel. To the extent defendant separately contends that counsel was ineffective because Watt did not personally attend the hearing, he has not established prejudice. No witness testified at the hearing. The motions addressed by the court were motions that defendant had filed as a self-represented litigant. The court reviewed the preliminary-examination transcript, ruled on the motion to quash and the motion to suppress, and invited defendant to make a record. Defendant identifies no argument that

Watt could have raised had she attended the hearing and no reasonable probability that Watt's personal appearance would have produced a different result. Defendant therefore has not established either a complete denial of counsel or ineffective assistance of counsel.

## D.  FELON-IN-POSSESSION STIPULATION

Defendant next contends that counsel was ineffective for stipulating that he had a prior felony conviction and had not regained eligibility to possess a firearm. We disagree.

The stipulation did not concede that defendant possessed a firearm during the charged offense. Instead, it established only the prior-conviction and eligibility components of the felon-in-possession charge. The prosecution remained obligated to prove that defendant possessed a firearm, and the jury was instructed on that element. Counsel could reasonably conclude that stipulating to defendant's ineligible status avoided exposing the jury to potentially prejudicial details concerning defendant's prior conviction. See *Old Chief v United States*, 519 US 172, 174, 190-192; 117 S Ct 644; 136 L Ed 2d 574 (1997). Defendant has not overcome the presumption that counsel's decision constituted sound trial strategy or shown prejudice. See *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012).

## E.  MISSING TRANSCRIPT AND BODY-CAMERA FOOTAGE

Defendant also argues that counsel was ineffective for failing to address the unavailability of the transcript from Demps's plea hearing and failing to introduce body-camera footage. These claims are unpersuasive.

At the August 7, 2023 hearing, the parties discussed their efforts to obtain the recording and notes from Demps's plea hearing. The prosecutor represented that the signed plea forms and agreement remained available, but the recording and notes could not be located. Defendant does not identify any material information that was unavailable from the surviving documentation or from Demps's trial testimony, any inconsistency that the missing transcript would have exposed, or any other basis to conclude that the transcript would have assisted the defense. The jury heard the terms of Demps's plea agreement, and defense counsel cross-examined Demps regarding her incentive to testify against defendant. Defendant has not shown a reasonable probability that further litigation concerning the missing plea-hearing transcript would have affected the outcome.

Although the record references the possible use of body-camera footage, no body-camera footage was submitted on appeal. Defendant does not identify a record-based offer of proof establishing what admissible, noncumulative information the footage would have shown. The jury heard Gill's testimony regarding Wright's statement, and defense counsel relied on that statement in arguing that Demps was not credible. This Court cannot speculate about the content of material outside the record. On the record before us, defendant has not shown deficient performance or prejudice.

## F.  REQUEST FOR REMAND

To the extent that defendant requests a remand for an evidentiary hearing, he has not supported that request with affidavits or other offers of proof demonstrating facts that require

-8-

development outside the existing record. See MCR 7.211(C)(1)(a). We therefore decline to remand.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello